IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CURMIT THOMAS HATCHER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. G-08-0012 |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 15) and petitioner Curmit Thomas Hatcher's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1). For the reasons explained below, the court will grant respondent's summary judgment motion and deny the petition.

## I.   Factual and Procedural Background

Hatcher was indicted in Galveston County, Texas, in Cause No. 03CR3867 for aggravated sexual assault of a child.[1]  Hatcher was found guilty by a jury and was sentenced by the jury to thirty-five years in prison.[2]

---

[1] Ex parte Hatcher, WR-68,575-02, Indictment, pp. 77-78.

[2] Id., Judgment and Sentence, p. 79.

Prior to his conviction, Hatcher drove a bus for the Discovery Club, a group that offers activities for children while their parents are at work, coached a football team, and often hosted sleep-overs with young boys at his apartment. The five-year-old victim in this case lived in the Children's Shelter with his mother and attended the Discovery Club. On October 9, 2003, Hatcher invited the victim to a football practice, pizza party, and a sleep-over at his apartment, which the victim attended.[3]

The victim's mother testified that when the victim returned from the sleep-over the next morning he looked exhausted, tired, and drained. He told his mother that he had slept with Hatcher in his bed while the other boys played games all night.[4] The victim's mother testified that a week after the sleep-over the victim was taking too long in the shower. She asked him why it was taking so long and he replied that he "hurt[ ] below."[5] When she asked why he was hurting below, the victim answered "Because Coach – Because Dustin, Dalton." Dustin and Dalton are two boys who also lived at the Children's Center.[6] The victim's mother also testified that after the sleep-over, the victim no longer wanted to attend the

---

[3]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. III pp. 178-80, 182-83, 185.

[4]Id. at 196.

[5]Id. at 198-99.

[6]Id., Vol. IV pp. 32-35.

Discovery Club[7] and began to act out at school in sexual ways, "asking the other children to suck his private areas and French kiss."[8]  Consequently, the victim's mother spoke to Terry Keel, the President of the Children's Center, and Keel referred her to Eunice Contreras, a therapist.[9]

Contreras testified that during a meeting she had with the victim, whenever they talked about Hatcher or the sleep-over, the victim became agitated.  Contreras asked the victim if anything happened at Hatcher's apartment, and he said that "[Hatcher] put his thing there" and pointed between his chest and waist.[10]  When Contreras inquired further about the sleep-over, the victim whispered, "he put it in my butt."[11]  The victim told Contreras that it hurt and said he wanted to see a nurse.[12]

The victim also testified at trial and described what happened at the sleep-over at Hatcher's apartment on October 9, 2003.  The victim testified that during the sleep-over, Hatcher's "front private" touched his "back private" and that it made him feel "sad."[13]  As to the statement he made to his mother concerning

_____

[7]Id., Vol. III p. 199.

[8]Id. at 203.

[9]Id. at 201.

[10]Id. at 69-72, 77-79.

[11]Id. at 116.

[12]Id. at 119.

[13]Id., Vol. IV pp. 86, 112.

Dustin and Dalton and about why he was hurting "below," the victim testified that although he had physically confronted the two boys before, they had never touched his "back private."[14]

Pediatrician James Lukefahr testified that he conducted a medical examination of the victim on December 15, 2003, a few days after the victim had met with Contreras.[15]  Doctor Lukefahr testified that during his examination of the victim, he found "abnormalities" that "could be consistent with abuse but could also be seen in non-abused children."[16]

Hatcher appealed his conviction to the Texas Court of Appeals. The Court of Appeals affirmed his conviction.[17]  Hatcher filed a petition for discretionary review with the Texas Court of Criminal Appeals, which was denied.[18]

After exhausting direct review of his conviction, Hatcher filed a state habeas corpus application where he raised fifteen ineffective-assistance-of-counsel claims, one claim of judicial error, and one claim of prosecutorial misconduct.[19]  The state

---

[14]Id. at 89-90.

[15]Id., Vol. III p. 128.

[16]Id. at 135.

[17]Ex parte Hatcher, WR-68,575-02, Opinion of Eleventh Court of Appeals.

[18]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 3.

[19]Ex parte Hatcher, WR-68,575-02, Application for Writ of Habeas Corpus, pp. 6-36.

-4-

habeas court recommended that the Texas Court of Criminal Appeals deny Hatcher's application,[20] and the court did so.[21]

Hatcher then filed a federal petition for habeas corpus. Hatcher raised the same claims in his federal petition that he had raised in his state application.[22]  In lieu of an answer, respondent filed a motion for summary judgment with brief in support.  Hatcher filed a reply, which abandoned all claims except for seven ineffective-assistance-of-counsel claims.[23]

## II.  Standards of Review

Respondent argues that he is entitled to a judgment because Hatcher's claims are without merit under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Because Hatcher filed his habeas petition after April 24, 1996, the AEDPA applies. Lindh v. Murphy, 117 S. Ct. 2059 (1997).

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), but only

---

[20]Ex parte Hatcher, WR-68,575-02, Findings of Fact and Conclusions of Law Without Evidentiary Hearing on Application for Writ of Habeas Corpus, p. 72.

[21]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, p. 4.

[22]See id. at 7-8.

[23]Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, pp. 10-12.

to the extent that the rule is consistent with the AEDPA, see Rule 11 of Rules Governing § 2254 Cases.  Under Rule 56 summary judgment is appropriate only if the pleadings and parties' submissions demonstrate that there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In habeas cases, however, the court cannot construe all facts in the light most favorable to the nonmoving party.  See Woods v. Cockrell, 307 F.3d 353, 356-57 (5th Cir. 2002).  Instead, the AEDPA requires the court to presume that all facts found by the state court are true absent clear and convincing evidence to the contrary.  Id. (citations omitted); 28 U.S.C. § 2254(e)(1).

The petitioner has the burden of establishing that he is entitled to relief under the AEDPA.  Orman v. Cain, 228 F.3d 616, 619 (5th Cir. 2000).  A court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  To determine whether the petitioner has made this showing, the court must first examine his underlying claims.  See Del Toro v. Quarterman, 498 F.3d 486,

-6-

490-491 (5th Cir. 2007) (affirming denial of a petitioner's habeas petition because he could not establish his claim on the merits); Neal v. Puckett, 286 F.3d 230 (5th Cir. 2002) (evaluating the merits of a petitioner's claim before concluding that although incorrect, the state court's decision was not an unreasonable application of federal law).

### III.  Analysis

In his original petition Hatcher raised four main claims.[24] However, in his reply Hatcher withdrew all claims except those related to the ineffective assistance of trial counsel.[25] Therefore, the court will address only Hatcher's seven ineffective-assistance-of-counsel claims.

To prevail on a claim of ineffective assistance of counsel, a petitioner must prove that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  Under the first prong the petitioner must demonstrate by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness.  Id.  Under the second prong the petitioner must affirmatively prove that "there is a reasonable

---

[24]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7-8.

[25]Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, pp. 10-12.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2067. For the petitioner's ineffective-assistance-of-counsel claim to succeed, the petitioner must make both showings. Id. at 2064. Hatcher alleges that he was denied effective assistance of counsel because his trial counsel (1) opened the door to harmful testimony, (2) failed to remove biased jurors from the jury, (3) withheld exculpatory evidence, (4) failed to consult with him about what questions to ask at the victim's competency hearing, (5) failed to prepare an adequate examination of both defense and prosecution witnesses, (6) failed to call additional defense witnesses, and (7) failed to object to improper statements by the prosecutor during sentencing.[26]  Each claim will be addressed in turn.

**A.   Opened the Door to Harmful Testimony**

Hatcher alleges that counsel opened the door to damaging witness testimony that the trial court had previously determined to be inadmissible.[27]  At trial Contreras (the therapist) was barred from disclosing the victim's statement "he put it in my butt," because she was not the outcry witness.[28]  During his cross-

---

[26]Memorandum in Support of Petition for a Writ of Habeas Corpus, Docket Entry No. 2, p. 4; Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, pp. 10-11.

[27]Id. at 12; id. at 12.

[28]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. III pp. 82-85.

examination of Contreras, Hatcher's counsel began asking questions about what the victim said during the therapy session, prompting the prosecutor to warn counsel that if he continued with that line of questioning, the prosecution would seek to have the victim's statement admitted.[29]   As cross-examination progressed, counsel continued to question Contreras about some statements the victim made during the therapy session, including the victim's statement that Hatcher had murdered some boys.[30]   Defense counsel also questioned Contreras about the victim's response when asked if anything happened to him during the sleep-over at Hatcher's apartment.   Because Contreras was barred from disclosing the victim's statement "he put it in my butt," she could only answer that the victim shrugged his shoulders.   However, the prosecutor was allowed on redirect to ask Contreras about the victim's verbal statement because the trial court found that counsel had opened the door to such testimony during his cross-examination.[31]

Hatcher argues that counsel's questioning of Contreras was deficient because it opened the door to the admission of damaging and otherwise inadmissible testimony, which, he argues, prejudiced his trial.[32]   "'Informed strategic decisions of counsel are given

---

[29]Id. at 101-02.

[30]Id. at 105, 112-13.

[31]Id. at 113-16.

[32]Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, p. 12.

a heavy measure of deference and should not be second guessed.'" <u>United States v. Jones</u>, 287 F.3d 325, 331 (5th Cir. 2002) (quoting <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999)).  "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"  <u>Id.</u> (quoting <u>Garland v. Maggio</u>, 717 F.2d 199, 206 (5th Cir. 1983)).

The prosecution's case relied primarily on the testimony and credibility of the five-year-old victim.  The victim's credibility was thus the central issue at Hatcher's trial.  The Court of Appeals found that counsel's decision to question Contreras about the victim's statements and his uncertain shoulder shrug was a strategic attempt to undermine the victim's credibility and that "[Hatcher's] trial counsel's representation did not fall below an objective standard of reasonableness."[33]  Hatcher has not shown that the appellate court's decision was an unreasonable application of clearly established federal law.

Moreover, even if deficient, Hatcher was not prejudiced by the admission of the victim's statement "he put it in my butt."  That statement was placed before the jury in several different ways: Contreras testified that the victim told her that "[Hatcher] put

_____

[33]<u>Ex parte Hatcher</u>, WR-68,575-02, Opinion of Eleventh Court of Appeals, pp. 84, 88.

his thing there," while pointing between his chest and waist;[34] the victim himself testified that during the sleep-over Hatcher's "front private" touched his "back private";[35] and Dr. Lukefahr testified that the victim's medical examination revealed anal abnormalities that were consistent with sexual abuse.[36]  In light of this evidence, there is not a reasonable probability that but for counsel's deficient conduct the outcome of Hatcher's trial would have been different.

**B.  Failed to Remove Biased Jurors**

Hatcher argues that his counsel was ineffective because he failed to strike two allegedly biased jurors -- Juror No. 10 and Juror No. 31.  During voir dire Juror No. 10 told counsel she was a probation officer, and Juror No. 31 told counsel that he was a prison guard.[37]  Hatcher alleges that while working as a probation officer before trial, Juror No. 10 saw Hatcher being arraigned for sexual assault against two other boys; however, Hatcher has produced no evidence to support this allegation.  Nor did Juror No. 10 disclose this information during voir dire.  Hatcher argues that based on these facts counsel should have struck both Juror

---

[34]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. III pp. 78-79.

[35]Id., Vol. IV pp. 86, 112.

[36]Id., Vol. III p. 135.

[37]Reporter's Record, Docket Entry No. 12, Jury Voir Dire Examination, pp. 8, 93.

No. 10 and Juror No. 31 from the venire panel and that his failure
to do so was both deficient and prejudicial.[38]

Generally, counsel's actions during voir dire are considered
to be matters of trial strategy.  Teague v. Scott, 60 F.3d 1167,
1172 (5th Cir. 1995).  To prove that counsel's failure to strike a
juror was deficient, Hatcher must demonstrate that his counsel was
"obligated . . . to use a peremptory or for-cause challenge on
the[] juror[]" because the juror was biased.  Virgil v. Dretke,
446 F.3d 598, 610 (5th Cir. 2006).  "'The bias of a prospective
juror may be actual or implied; that is, it may be bias in fact or
bias conclusively presumed as a matter of law.'"   Solis v.
Cockrell, 342 F.3d 392, 395 (5th Cir. 2003) (quoting United States
v. Wood, 57 S. Ct. 177, 179 (1936)).  Actual bias exists in cases
where a juror has expressed a fixed opinion indicating "that they
could not judge impartially the guilt of the defendant," or "render
a fair and impartial verdict based on the evidence."  Chavez v.
Cockrell, 310 F.3d 805, 811 (5th Cir. 2002) (internal quotation
marks omitted); see also Virgil, 446 F.3d at 613 (holding that two
jurors were actually biased where they had both "unequivocally
expressed that they could not sit as fair and impartial jurors").
Implied bias exists only in "extreme situations," such as when a
juror was "apprised of such inherently prejudicial facts about the
defendant that the court deems it highly unlikely that the juror

---

[38]Memorandum in Support of Petition for a Writ of Habeas
Corpus, Docket Entry No. 2, pp. 12-13;

can exercise independent judgment, even if the juror declares to the court that he or she will decide the case based solely on the evidence presented." <u>Solis</u>, 342 F.3d at 396-97 (internal quotation marks omitted).  Bias will not be implied, however, "'solely on the basis that [a juror] has been exposed to prejudicial information about the defendant outside the courtroom.'" <u>Id.</u> at 398 (quoting <u>Willie v. Maggio</u>, 737 F.2d 1372, 1379 (5th Cir. 1984)); <u>see also</u> <u>Willie</u>, 737 F.2d at 1380 ("[I]n the context of federal habeas proceedings, the fact that a juror was exposed to a defendant's prior conviction or to news accounts of the crime with which he is charged does not presumptively deprive[] the defendant of his constitutional rights." (internal quotation marks omitted)). Moreover, jurors are presumed to be impartial. <u>United States v. Ruggiero</u>, 56 F.3d 647, 652 (5th Cir. 1995).

As a threshold matter, Hatcher's claim fails because, based on the state habeas court's factual findings, Hatcher agreed with his counsel not to strike either juror for strategic reasons. According to counsel's affidavit, filed as part of Hatcher's state habeas proceedings, during voir dire he and Hatcher discussed whether to strike Juror No. 10 and Juror No. 31, and decided jointly not to strike Juror No. 10 because she would understand the criminal case and consider the full range of punishment or Juror No. 31 because he appeared reasonable.[39]  In reaching its decision,

---

[39] <u>Id.</u>

the state habeas court credited counsel's affidavit.[40]  Hatcher has not produced any evidence to rebut these findings.  Therefore, the court must presume that Hatcher decided with his counsel to leave these two jurors on the venire panel.  See 28 U.S.C. § 2254(e)(1).

The finding of the state habeas court is fatal to Hatcher's claim.  In deciding with his counsel how to exercise his jury strikes Hatcher had all of the relevant information before him:  He knew the jurors' occupations, he had heard them state that they could be fair and impartial and could consider the full range of punishment, and he presumably knew that Juror No. 10 had (allegedly) seen him being arraigned for another sexual assault. Nonetheless, Hatcher decided with his counsel not to strike either juror.  Having taken part in that decision, Hatcher cannot now claim that failing to strike either juror amounted to ineffective assistance.  Cf. Del Toro, 498 F.3d at 491.

However, even if Hatcher could show that he did not take part in or endorse the decision not to strike Juror No. 10 or Juror No. 31, Hatcher's claim still fails because he has not shown counsel's decision not to strike Juror No. 10 and Juror No. 31 was deficient.  That is, Hatcher has failed to show that counsel was obligated to use a peremptory or for-cause challenge on either Juror No. 10 or Juror No. 31.  Hatcher has not pointed to any

---

[40]Ex parte Hatcher, WR-68,575-02, Findings of Fact and Conclusions of Law Without Evidentiary Hearing on Application for Writ of Habeas Corpus, p. 72.

statements in the record from either Juror No. 10 or Juror No. 31 that indicate actual bias.  Neither juror indicated during voir dire that they had fixed opinions about Hatcher's guilt or that they could not base their verdict solely on the evidence produced at trial.  Rather, both jurors indicated during voir dire that they could be fair and impartial.[41]  Although, as Hatcher points out, both jurors admitted to being "public servants," that fact alone is insufficient to overcome the presumption of juror impartiality or to establish actual bias.

Finally, Hatcher has not established that either juror was impliedly biased.  Hatcher has not established that Juror No. 31 knew of any "inherently prejudicial" facts about him such that the court could presume that Juror No. 31 could not be impartial despite his assertions that he could be.  And even if the court assumed that Juror No. 10 saw Hatcher being arraigned in another sexual assault case, that fact alone is not sufficient to establish implied bias.  Although such information could be prejudicial, it is not so inherently prejudicial that the court could conclude that it was highly unlikely that Juror No. 10 could remain impartial.

Generally, courts find implied bias only when a juror participated in a defendant's prior conviction or personally witnessed a defendant being convicted, <u>Solis</u>, 342 F.3d at 395-96 (citing <u>Leonard v. United States</u>, 84 S. Ct. 1696 (1964)); or when

---

[41]See Reporter's Record, Docket Entry No. 12, Jury Voir Dire Examination, pp. 8-9, 93, 107-08.

a juror had some sort of "substantial emotional involvement" in the case, <u>id.</u> at 398-99.   Witnessing someone being arraigned for another related crime does not rise to a comparable level of prejudice.   <u>Cf.</u> <u>Willie</u>, 737 F.2d at 1378-80 (refusing to impute bias to four jurors in defendant's trial who were present during the co-defendant's voir dire and heard the co-defendant's attorney indicate that the defendant had killed the victim).   For all of these reasons Hatcher's claim fails.

## C.   Withheld Exculpatory Evidence

Hatcher alleges that he was denied effective assistance of counsel because his counsel withheld exculpatory evidence.   Hatcher alleges that the prosecutor faxed defense counsel a document containing a statement from the victim that nothing happened at the sleep-over.   Hatcher argues that because this alleged document proves his innocence, counsel should have brought it to the attention of the court and filed a motion to dismiss the case against him.[42]

The basis for this claim appears to be a reference by Hatcher's counsel to a note from the district attorney's office during his voir dire examination of the state's expert witness, Reporter's Record, Vol. 3 pp. 158-159.   There is no evidence as to whether such a document actually existed or what it said.

---

[42]Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, p. 15.

Moreover, Hatcher has failed to show that there was a reasonable probability that had the document been admitted it would have changed the outcome of his trial.  The evidence indicating that Hatcher assaulted the victim was substantial in both quantity and quality.  There is no reasonable probability that, in the face of this evidence, the trial court would have dismissed the charges against Hatcher, or, to the extent Hatcher makes the claim, that the jury would have reached a different conclusion had counsel introduced the alleged note.

**D.   Failure to Consult About What Questions to Ask the Victim at the Competency Hearing**

Hatcher's claim that counsel was ineffective because he failed to consult with Hatcher about what questions to ask at the victim's competency hearing is meritless.  Hatcher argues that he would have advised counsel to ask about the sleeping arrangements at the sleep-over, the victim's statement to Eunice Contreras that he was at therapy because Hatcher had been arrested, and his relationship with Dustin and Dalton, the boys whom he named when he told his mother that he "hurts below" while taking a shower a few days after the sleep-over.[43]  However, Hatcher has not established a reasonable probability that had counsel consulted with him, and asked Hatcher's proposed questions, the result of the proceeding (either

_____

[43]Memorandum in Support of Petition for a Writ of Habeas Corpus, Docket Entry No. 2, p. 16; Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, p. 16.

his trial or the competency hearing) would have been different. Moreover, since trial counsel asked most of the questions that Hatcher asserts he would have told counsel to ask,[44] the court doubts whether such a showing could be made.[45]

## E.   Failure to Adequately Examine Both Defense and Prosecution Witnesses

Hatcher argues that counsel was deficient because he failed to adequately examine defense witnesses and to properly cross-examine the prosecution's witnesses. "[T]he presentation of witness testimony is essentially strategy and thus within the trial counsel's domain[.]" Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).

---

[44]Id. at 81-82.

[45]Hatcher also alleges that he was denied the right to be present at the victim's competency hearing.  This is actually a claim of trial court error.  A defendant's exclusion from a competency hearing does not violate his rights under the Sixth Amendment's Confrontation Clause or the Fourteenth Amendment's Due Process Clause if (1) the competency hearing is primarily composed of background questions and questions regarding what it means to tell the truth, (2) the defendant has the opportunity for full and effective cross-examination of the witness at trial, and (3) the defendant's presence would not have assisted the competency determination.  Kentucky v. Stincer, 107 S. Ct. 2658, 2666-67 (1987).  The record shows that the court conducted the majority of the competency hearing, asking the victim about his birthday, school, and whether he understood the difference between the truth and a lie.  Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. IV pp. 78-81.  Hatcher had the opportunity to fully and effectively cross-examine the victim at trial.  And Hatcher has not provided a persuasive reason as to why his presence would have assisted the determination of whether the victim was competent to testify.  Thus, Hatcher's right to confrontation was not violated.

Hatcher's claim concerning defense witnesses centers on the testimony of two brothers who attended the sleep-over where the victim was assaulted.[46]  Hatcher argues that counsel's conduct was deficient with respect to these two witnesses because had counsel properly investigated and prepared the brothers' testimony, they would have testified that the victim slept with Hatcher's nephew on the couch in the living room and not in Hatcher's bed as the victim originally told his mother and stated in his therapy session with Contreras.  Hatcher also argues that counsel should have elicited testimony from the two brothers regarding the football practice that took place prior to the sleep-over and the number of teams in the league in which Hatcher coached.[47]

During the guilt-innocence phase of Hatcher's trial counsel called the two brothers[48] and elicited testimony on precisely these subjects.  Counsel asked about the sleeping arrangements at the sleep-over, and both brothers confirmed that the victim slept on the couch in the living room and not with Hatcher in his bedroom.[49] Counsel also questioned the brothers about the football practice that preceded the sleep-over and Hatcher's involvement in the

---

[46]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. V pp. 4, 56.

[47]Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, p. 17.

[48]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. V pp. 1-5, 34, 47-56.

[49]Id. at 17-18, 50-52.

football league in general.[50]  Thus, there is no factual basis for Hatcher's claim.

Hatcher also alleges that counsel was ineffective for failing to investigate and effectively impeach the testimony of the victim's mother.[51]  Hatcher argues that counsel should have further investigated the attempt that the victim's mother made to establish a personal relationship with him and used that attempt to impeach her testimony.[52]  According to Hatcher, he provided counsel with a note that the victim's mother wrote in July 2003 asking if she and Hatcher could get together, and expressed his belief that the victim and his mother falsely accused Hatcher of sexual assault because he declined to establish a relationship with the victim's mother.[53]

The court finds nothing deficient about counsel's decision not to investigate the victim's mother's attempt to establish a relationship with Hatcher or his decision not to use evidence of that attempt to impeach her testimony.  Counsel investigated and pursued other reasonable and effective impeachment strategies.  He

---

[50]Id. at 3-5, 8-9, 42-43, 49.

[51]Memorandum in Support of Petition for a Writ of Habeas Corpus, Docket Entry No. 2, p. 19; Petitioner's Reply to Respondent Quarterman's Motion for Summary Judgment with Brief in Support, Docket Entry No. 19, p. 19.

[52]Id.

[53]Id.; id. at 18-19.

questioned the victim's mother about her residence in numerous shelters, her prior drug charges, and some allegedly false allegations that the victim had been physically abused.[54] Hatcher has failed to explain or establish that counsel's decision to follow this impeachment strategy rather than Hatcher's suggested strategy was unreasonable or prejudiced his defense.

**F.   Failed to Call Additional Witnesses for the Defense**

Hatcher alleges that counsel was deficient for failing to call as defense witnesses "Trevoir and De Andra," two other boys who attended the sleep-over; Terry Keel, the director of the shelter where the victim and his mother resided; Ms. Kelly, his supervisor; a boy who played on Hatcher's football team and lived with Hatcher for a time in late 2003; and unidentified shelter residents and doctors who could have testified concerning Hatcher's innocence.[55] Generally, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" <u>Coble v. Quarterman</u>, 496 F.3d 430, 436 (5th Cir. 2007) (quoting <u>Boyd v. Estelle</u>, 661 F.2d 388, 390 (5th Cir. 1981)). Thus, to prevail on such a claim Hatcher

---

[54]Reporter's Record, Docket Entry No. 12, Trial on Guilt/Innocence, Vol. IV pp. 10-13, 66-70.

[55]Memorandum in Support of Petition for a Writ of Habeas Corpus, Docket Entry No. 2, pp. 18-19.

must establish that these witnesses would not only have testified, but that the witnesses' testimony would have been favorable to the defense.  <u>Alexander</u>, 775 F.2d at 602.

Hatcher's claim concerning the potential testimony of "Trevoir and De Andra" borders on the frivolous.  Hatcher alleges that these two witnesses would have testified about taking the snacks that the victim's mother brought to Hatcher's apartment the night of the sleep-over and about what time Hatcher returned the victim to the shelter after the sleep-over.[56]  Hatcher argues that this testimony would have undermined the credibility and testimony of the victim's mother that she gave the snacks directly to Hatcher on the night of the sleep-over and that Hatcher brought the victim back to the shelter late the next morning.[57]  However, counsel's failure to call the boys as witnesses was not deficient because reasonable counsel could have decided that the testimony would have been of minimal evidentiary or impeachment value.  Even if the jury had favored Trevoir and De Andra's version of the facts, impeaching the mother's recollection of such minor events would likely have been of little import to the jury.

Hatcher's claim concerning counsel's failure to call Terry Keel is equally meritless.  Hatcher has not produced any evidence suggesting either that Keel would have testified or that his

---

[56]<u>Id.</u> at 18.

[57]<u>Id.</u>

-22-

testimony would have been favorable.  Furthermore, given that Keel
was included on the prosecution's list of potential witnesses,[58] and
had also filed a police report against Hatcher,[59] the court doubts
whether any testimony from Keel would have been favorable.

Finally, Hatcher's claims regarding counsel's failure to call
Ms. Kelly, the boy that had lived with Hatcher, and the
unidentified residents and doctors fail for the same reasons.
Although Hatcher has provided his own description as to what these
witnesses could have testified at trial,[60] Hatcher has failed to
affirmatively establish that any of these witnesses would actually
have testified or testified favorably at trial.

**G.   Failed to Object to Improper Statements by the Prosecutor**

In his last ineffective-assistance-of-counsel claim, Hatcher
alleges that his counsel failed to object to the prosecutor's
improper statements made during sentencing.[61]  Hatcher first argues
that counsel was deficient for failing to request a curative
instruction after the court sustained counsel's objection to the

---

[58]Petitioner's Reply to Respondent Quarterman's Motion for
Summary Judgment with Brief in Support, Docket Entry No. 19,
Exhibit F, State's Prospective Witness List.

[59]Id., Exhibit O, Police Report.

[60]Memorandum in Support of Petition for a Writ of Habeas
Corpus, Docket Entry No. 2, p. 18.

[61]Memorandum in Support of Petition for a Writ of Habeas
Corpus, Docket Entry No. 2, p. 21; Petitioner's Reply to
Respondent Quarterman's Motion for Summary Judgment with Brief in
Support, Docket Entry No. 19, p. 21.

prosecutor's sarcastic question to Hatcher as to whether the boys
who testified against him benefitted by testifying against him.[62]

Counsel's failure to request an instruction was not deficient.
Counsel objected to the prosecutor's question,[63] and the court
sustained the objection.[64]  Counsel could have reasonably decided
not to draw further attention to the comment by requesting that the
jury be instructed to disregard it.

Hatcher next asserts that counsel failed to object to the
prosecutor's improper statements during closing arguments at
sentencing.  To prove counsel's failure to object was deficient
petitioner must show that solid, meritorious arguments based on
directly controlling precedent imposed upon his counsel a duty to
object.  See United States v. Conley, 349 F.3d 837, 841 (5th Cir.
2003).  "Failure to raise meritless objections is not ineffective
lawyering; it is the very opposite."  Clark v. Collins, 19 F.3d
959, 966 (5th Cir. 1994).

Hatcher argues that counsel should have objected to the
prosecutor's statements that Hatcher sexually assaulted the victim
just like he had assaulted two other boys that testified at
sentencing; that Hatcher attempted to bathe the victim at the

---

[62]Memorandum in Support of Petition for a Writ of Habeas
Corpus, Docket Entry No. 2, p. 21; see also Reporter's Record,
Docket Entry No. 12, Trial on Punishment, Vol. VII p. 47.

[63]Reporter's Record, Docket Entry No. 12, Trial on Punishment,
Vol. VII p. 47.

[64]Id.

sleep-over;[65] and that Hatcher was "a serial child molester."[66]  The court finds nothing deficient about counsel's failure to object to any of these statements because any such objection would have been futile.  The first two statements were merely a summation of the evidence: the victim and two other boys testified either at trial or at sentencing that Hatcher had sexually assaulted them;[67] and Hatcher testified at sentencing that, despite his attempts, the victim refused to take a bath at the sleep-over;[68] and the prosecutor's statement that Hatcher was a "serial child molester" was a reasonable deduction from the evidence.  The victim and two other boys testified that Hatcher had assaulted them on numerous occasions.  Accordingly, there was nothing objectionable about these statements from the prosecutor.  See <u>Alejandro v. State</u>, 493 S.W.2d 230, 231 (Tex. Crim. App. 1983).

## IV.  <u>Conclusion and Order</u>

Because Hatcher has failed to state any meritorious claims, the court cannot conclude that the state habeas court's denial of Hatcher's claims was unreasonable for purposes of the AEDPA.

---

[65]Reporter's Record, Docket Entry No. 12, Trial on Punishment, Vol. VII p. 68.

[66]<u>Id.</u> at 84.

[67]Reporter's Record, Docket Entry No. 12, Trial on Punishment, Vol. VI pp. 82, 123-25.

[68]<u>Id.</u>, Vol. VII pp. 35-36.

-25-

Therefore, based on the foregoing analysis, Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 15) is **GRANTED**, and Hatcher's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 10th day of July, 2008.

_____

SIM LAKE

UNITED STATES DISTRICT JUDGE